L. M. HARTLEY, Appellant, v. BOARD OF SUPERVISORS et al., Appellees.

**HIGHWAYS:** Establishment—Petition—Filing—Sufficiency. Petitions for the establishment of highways are "filed," within the requirement of the statute, when left with the auditor and by him duly presented to the board of supervisors. No formal filing mark is necessary. Sec. 1484, Code, 1897.

**HIGHWAYS:** Establishment—Commissioner—Time Limit for Commencing Examination. The statutory requirement that the county auditor fix the time when the commissioner shall *commence* the examination as to the expediency of the proposed highway, is directory only.

**HIGHWAYS:** Establishment—Commission—When Effective. A paper in the form of a commission to the one designated to examine into the expediency of a proposed highway has no life, and therefore no legal effect, *until delivered to the said commissioner.*

**HIGHWAYS:** Establishment—Notice to Owners and Occupants—Appearance—Effect. Appearance of a nonresident landowner to a proceeding to establish a highway through or along his land, obviates any necessity for notice on the mere occupants of the land. Sec. 1495, Code Supp., 1913.

**HIGHWAYS:** Establishment—Appraisers of Damages—Appointment—Sufficiency. Appraisers of damages need not be appointed *immediately* upon the expiration of the time for filing claims for damages. Appointments within a reasonable time are valid.

HIGHWAYS: Establishment—Width of Highway. The board of
6 supervisors may establish a highway at a width of 50 feet,
irrespective of the limits fixed in the petition. Sec. 1483, Code
Supp., 1913.

HIGHWAYS: Establishment—Buildings and Orchards—Effect. Non-
7 permanent buildings erected in the path of a proposed high-
way after the filing of a petition therefor, and the non-bearing
remnants of an orchard, are no impediments to the establish-
ment of the highway.

*Appeal from Lee District Court.*—H. BANK, JR., Judge.

WEDNESDAY, APRIL 4, 1917.

APPEAL from the action of the district court in a pro-
ceeding in certiorari instituted in said court, involving the
legality of the action of the board of supervisors of Lee
County in the establishment of a certain highway. Upon
full hearing in the district court, the writ of certiorari was
dismissed. Plaintiff appeals to this court.—*Affirmed.*

*J. C. McCoid,* for appellant.

*Theodore A. Craig, E. C. Weber* and *George B. Stewart,*
for appellees.

GAYNOR, C. J.—This is an action in certiorari to review
the action of the board of supervisors of Lee County in
the location and establishment of a public highway. It is
asserted that the board acted without jurisdiction and il-
legally. A petition for a writ of certiorari was presented
to the district court of Lee County, writ issued, and the
matter ordered transferred to the district court for hear-
ing. The return made to the writ shows that, on the 1st
day of February, 1909, there was delivered to the auditor
of Lee County, at his office, a petition asking the establish-
ment of a public highway commencing at the southeast cor-
ner of Section 1, Township 69 North, Range 7 West, Lee
County, running thence north one mile, and terminating
at the northeast corner of the same section. This petition
was signed by Stephen Pollmiller, John Box, William J.

Menke, John Peitzmeier and J. T. Moeller, and 74 other persons. A bond was filed by the petitioners in the sum of $200, as required by statute, signed by the 5 petitioners above named. It does not appear that there were any sureties on the bond.

On the 2d day of February, 1909, a commission was prepared by the auditor, directed to M. E. Bannon, appointing him commissioner to examine into the expediency of establishing the proposed road. This commission recited that he was appointed commissioner to examine into the expediency of establishing the road (describing it), and notified him to appear at the office, or at the office of some justice of the peace or notary public, and qualify according to law. The commission directed him to commence the examination of the road above described on the ———— day of February, 1909, and if, in his judgment, the road was needed, or one in the vicinity of the one described, answering the same purpose, to proceed to lay out and mark the same according to law. He was then given full instructions as to how to proceed. The commission required him to report his doings in the premises at the auditor's office between the 8th and 27th days of February, 1909.

It appears from the record that Bannon was not in the state at that time; that he did not appear at the office until the 27th day of February, 1909; that on that day he appeared, took the oath required of a commissioner, and the auditor wrote upon the commission extending the time to report until March 25, 1909, and delivered the commission to him. Thereafter, on the 25th day of March, 1909, the commissioner made his report in favor of establishing the highway as petitioned for. It further appears from the return that, on the 25th day of March, A. D. 1909, the following notice was issued, directed to Hartley, the plaintiff herein, Theresa Jacobsmeier, Katherine and Theresa Pollmiller, to wit:

"The commissioner appointed to view, and, if required, to survey and lay out a highway (describing the highway as described in the petition), has reported in favor of the establishment of the same, 50 feet wide, and all objections thereto, or claims for damages must be filed in the auditor's office on or before noon of the 31st day of May, 1909, or such highway will be established without reference thereto."

There is no complaint of the service of this notice on Hartley, the plaintiff, and Theresa Jacobsmeier. It is claimed, however, that the service was defective as to Katherine and Theresa Pollmiller. We will not set out the return as to these two, for the reason that, for the purposes of this case, we may concede that the service was insufficient. This concession is made for the reason that, upon a hearing, before the board of supervisors which commenced on September 18, 1909, and continued and was not closed until October 25, 1909, Katherine and Theresa appeared before the board on October 15th, while the case was still pending, and waived all claim for damages, and requested that the road be established as reported by the commissioner. They therefore came into the case before its final disposition, and waived every right which they might have asserted had they been properly served with notice. It appears also that notice was duly published as required by statute, setting out the appointment of the commissioner; a description of the road to be established, and that the commissioner had reported in favor of establishing a road 50 feet wide along the line petitioned for—in substance the same as the notice served on Hartley.

Before the commencement of the trial before the board, Hartley filed objections claiming that the highway, if established, would run through an orchard; that it would necessitate the removal of buildings; that there was no necessity for the establishment of the highway; that the needs of the public did not require it; that it would be very costly to

the public, and a damage to the plaintiff. On the same day,
Hartley filed a claim for damages, in which he says that
the board has no right to establish the road proposed, and
that, without waiving the objections which he has filed to
the establishment of it, he makes a claim for $25,000 dam-
ages. In this claim he sets out all the items of damage
which he thinks he will sustain if the road is established.
On the 1st day of June, 1909, a commission was ap-
pointed to appraise the damages, and they appraised Hart-
ley's damages at $1,000, and reported the same to the board.
It appears that, after a full hearing before the board on
the objections of Hartley to the establishment of the road,
and on his claim for damages, the board found that the
public good required the establishment of said road 50 feet
wide, and that L. M. Hartley sustained damages in the
amount of $500. Thereupon, the board made the follow-
ing order:

"Resolved, by the board of supervisors of Lee County,
Iowa, that a highway 50 feet wide, to wit: Commencing at
the southeast corner of Section 1, Township 69 North, Range
7 West, running thence north one mile and terminating at
the northeast corner of said Section 1, Township 69 North,
Range 7 West, and between the points designated, and that
the damages sustained by L. M. Hartley be assessed and
placed at $500, and that said highway as described be, and
the same is hereby, established upon payment, on or before
the next regular session of said board, to be begun and
holden at Ft. Madison, Iowa, on the 1st day of November,
A. D. 1909, by said petitioners of the sum of $500 damages
awarded to said L. M. Hartley, and the costs of this pro-
ceeding, taxed at $238.25, and the said auditor is hereby
ordered and instructed to notify the township clerks of
Marion and Cedar Townships of the establishment of said
highway upon payment of damages and costs, and that said
proposed highway shall be opened for public travel within

10 days after costs and damages are paid, without expense to Lee County."

On the 3d day of November, 1909, after said order had been made of record, the board of supervisors, without further notice, made the following order:

"Whereas, the board of supervisors of Lee County, Iowa, by resolution and order entered on the 25th day of October, 1909, granted the prayer of petitioners John Middendorf et al. for the establishment of a highway upon payment of damages and costs, and

"Whereas, said John Middendorf et al. have deposited the sum of $500 with the auditor of Lee County, Iowa, for payment of damages, and have paid the costs taxed at $238.25.

"Now, therefore, it is hereby ordered by the board of supervisors as aforesaid that the following described highway, to wit: Commencing at the southeast corner of Section 1, Township 69 North, Range 7 West, and running thence north one mile and terminating at the northeast corner of said Section 1, Township 69 North, Range 7 West, be, and the same is hereby opened as declared in said former resolution, and the auditor of Lee County, Iowa, is hereby ordered to notify the clerks of Marion and Cedar Townships to that effect, and that said road be opened for travel within 10 days from date of notifying said clerks."

Upon the return so made and oral testimony offered upon the trial, the district court, on the 15th day of July, 1912, affirmed the action of the board and dismissed the writ, and from this action of the court the appeal now under consideration is taken.

1. HIGHWAYS: establishment: petition: filing: sufficiency.

Plaintiff complains: (1) That the record does not show that a petition was ever filed in the office of the auditor of the county, praying for the establishment of the road in question. The contention is bottomed on the thought

that the record does not show that the petition was marked
"filed" by the auditor. It does appear that the petition was
prepared and signed by the petitioners, substantially as
hereinbefore set out, that it was delivered to the auditor at
his office, and retained by him, and that he acted upon it.

Section 1484, Code, 1897, provides that any person
desiring the establishment of a road shall file in the audi-
tor's office of the proper county a petition. Code Section
1485 provides that, before the filing of such petition, the
auditor shall require the giving of a bond with sureties to
be approved by him, conditioned that all expenses growing
out of the application shall be paid by the obligors. Sec-
tion 1486, Code, provides that, when the foregoing require-
ments have been complied with, the auditor shall appoint
some suitable and disinterested elector of the county as a
commissioner to examine into the expediency of the pro-
posed highway and report accordingly. Code Section 1494
provides that the time for the commissioner to commence
the examination shall be fixed by the auditor, and, if he
fails to commence or so report, the auditor may fix another
day or extend the time for making such report, or may ap-
point another commissioner. Code Section 1495 provides
that, within 20 days after the day is fixed by the auditor,
a notice shall be served on each owner of land lying in the
proposed road or abutting thereon, as shown by the transfer
books in the auditor's office, who resides in the county, in
the manner provided for the service of original notices. If
the owner of the land as thus shown does not reside in the
county, similar notice shall be served upon any person
who is in the actual occupancy of such land. In any case,
notice shall be published for four weeks in some newspaper
printed in the county. Section 1498, Code, provides that,
if objections to the establishment of the road, or claims for
damages, are filed, the further hearing of the application
shall stand continued to the next session of the board held

after the commissioners appointed to assess damages have reported. All claims for damages and objections to the establishment must be in writing, and the statement shall be considered denied in all subsequent proceedings. Section 1501 provides that, when the time for final action arrives, the board may hear testimony, receive petitions and remonstrances, and establish the road as in their judgment, founded on the testimony, the public good may require. The board may increase or diminish the damages allowed by the appraisers, and may establish it upon condition that the petitioners pay all damages awarded or any part thereof.

As to the first objection, that the petition was not filed because not marked filed, we have to say that we do not think that the word "file," as used in the statute, is to be understood in that technical sense in which it is used in courts of record. The petition is addressed to the board of supervisors, and is to be presented to them. Without presentation to the board, it becomes of no validity. The auditor is ex-officio clerk of the board. It is delivered to him for the purpose of presenting it to the board. When it is prepared and delivered to him for that purpose and he presents it to the board and the board acts upon it, all that the statute contemplates by the word "file" has been accomplished. We think there is nothing in this contention of the plaintiff's.

2. HIGHWAYS: establishment: commissioner: time limit for commencing examination.

It is next contended that Code Section 1494, hereinbefore set out, requires the auditor to fix the time when the commissioner will commence the examination. We think this is merely directory. It does not go to the jurisdiction of the board to act upon the petition, or upon the report.

It is next contended that the commis-

**3. HIGHWAYS:**
**establishment:**
**commission:**
**when effective.**

sion prepared by the auditor recites that he should report between the 8th and 27th days of February, and it is claimed that the commission expired before he ever undertook to act under it. It is assumed that, when the commission was prepared by the auditor, it became an active thing, conferring powers upon Bannon to act as commissioner. This assumption is not well founded. The commission was prepared by the auditor, but not delivered to Bannon until the 27th day of February. On that day, he appeared, took the oath, received the commission, and at that time, the auditor fixed the time when he would be required to report. The commission had no life until it was issued. When it was issued and received by Bannon, the auditor fixed the time for reporting at March 25, 1909. Bannon received the commission that authorized him to act, on the day he took the oath as commissioner. The auditor, who had the original power to issue the commission—who did in fact issue this commission—then fixed the time within which the commissioner should report, and fixed it at the 25th day of March. The fact that in preparing the commission he had fixed an earlier date, did not take from him the power to fix some other date at the time the commission was actually issued. That was the time the commission received its life; that was the time Bannon became a commissioner. The commission, with the change, was the commission under which he had a right to act, and acted. Therefore, the contention of the plaintiff that, when Bannon received the commission, it had expired and was dead, is not tenable. It never became a commission until it was delivered by the auditor to the commissioner. That was when it received its life.

It is next contended that, under Section

**4. HIGHWAYS:**
**establishment:**
**notice to own-**
**ers and occu-**
**pants: ap-**
**pearance:**
**effect.**

1495, Code Supp., 1913, notice must be served on each owner of land lying in the proposed highway, or abutting thereon, as shown by the transfer books. On resident

owners, the service must be made as provided for the service of original notices. On nonresidents, a similar notice must be served upon the person who is in the actual occupancy of the land. Katherine and Theresa Pollmiller were nonresident owners. It is claimed that no notice was served upon them, nor upon persons in possession of the land. Service upon the person in possession of the land is intended as service on the owners. The purpose of the service on the person in possession is not to give him notice in his own right, but to serve as constructive notice on the owners. These Pollmillers appeared during the proceeding, submitted themselves to the jurisdiction of the board of supervisors, waived all claim for damages, consented to the establishment of the highway, and are not complaining of the action of the board in establishing the highway. The board, therefore, had jurisdiction not only of the subject-matter but of the parties, before the final order was made. This complaint is not well taken.

5. HIGHWAYS: establishment: appraisers of damages: appointment: sufficiency.

It is next contended that no lawful commission was ever issued to appraisers, and that the appraisers were not appointed at the time required by the statute. This involves a construction of Section 1499, Code, 1897, which provides:

"Upon the expiration of the time for filing claims for damages, if any are filed, the auditor shall appoint three disinterested electors of the county as appraisers, to assess the amount of damages."

The time for filing claims was extended to the 31st day of May, 1909. On the 1st day of June, 1909, these commissioners were appointed, and in the commission they were directed to appear on the 8th day of June, 1909, at the hour of 8 o'clock, and to proceed on the same day to perform the duties conferred upon them by the commission. On the 8th day of June, they proceeded to make examination and to

assess the damages, and on the 9th day of June, made the report. The assumption of appellant is that this statute required that the appraisers be immediately appointed and proceed to discharge their duties as appraisers. This we do not think is either the spirit or the letter of the law. The statute must be construed to mean "within a reasonable time," and it is so construed. Plaintiff says that it means "immediately following the noon hour on the 31st day of May, 1909," the last day fixed for the filing of claims. The record shows that the appointment was made the next day after the expiration of the time for filing claims. We think this is sufficient compliance with the requirements of the statute.

It is next contended that the auditor

6. HIGHWAYS: establishment: width of highway.

has no power to establish a highway less than 66 feet wide, and that the report of the commissioner recommending the establishment of a road 50 feet wide did not confer jurisdiction on the auditor to establish it. The auditor has no power to fix the width or establish the highway. The auditor only appoints the commission, whose duty it is to examine into the expediency of establishing the proposed highway. The board must fix and establish.

Section 1483, Code, 1897, provides:

"Roads hereafter established, unless otherwise fixed by the board, shall be at least 66 feet wide, and in no case less than 40."

The power lay in the board to fix the width of the road at 66 feet, or at a lesser width; not less, however, than 40 feet. This petition was addressed to the board. The petition asked the board to do that which, under the law, it had a right to do. If the board had a right to establish a road less than 66 feet wide, it had a right to require its commissioner to ascertain the expediency of establishing a road at less than 66 feet. This was all that was done. The com-

missioner's duty was only to report to the board the expediency of establishing the road prayed for. The board was not confined to the limits fixed in the petition. The board fixed the width of the highway at 50 feet. This it had authority to do under the statute.

7. HIGHWAYS: establishment: buildings and orchards: effect.

It is next contended that the board of supervisors had no power to open the proposed highway, and the commissioner had no right or authority to recommend the establishment of the proposed highway, because there was a building in the line of the proposed highway; and, further, that the road, when established, would pass through plaintiff's orchard. Reliance is had on Section 1487, Code, 1897, for this contention, which provides:

"No road shall be established through any * * * garden, orchard, or ornamental ground contiguous to any dwelling house, or so as to cause the removal of any building, without the consent of the owner."

This contention presents a fact question that is in dispute in this case. A review of the evidence satisfies us, however, that neither of these contentions is good, upon the facts presented. What we consider the great preponderance of the evidence shows that there was no living orchard in the line of this road at the time the petition was filed, and the commissioner made his examination. The most that can be said is that, at some time before that, there had been an orchard there, the stumps of which were remaining, and some old trees that were not productive. It appears that there had been an old road at this same line prior to this time, which, upon the petition of the plaintiff, had been vacated; that this old road was 60 feet wide; that there were hedges on either side for considerable distance. There was an orchard west of the proposed highway. The evidence shows that there were no living fruit trees in the line of the proposed highway in February of

1909, and the great part of all the trees in the orchard were dead in February, 1909. It is not necessary to review the testimony on this point. On this point see *Wilson v. Creekmore*, (Ky.) 27 S. W. 809, in which the court said, in substance:

"A field once used as an orchard, but in which most of the trees are dead and none bear fruit, is not an 'orchard', within the meaning of the statute forbidding the opening of a road through an orchard."

As to the building claimed to be in the line of the proposed highway, the records disclose that the building was a shed, constructed by the plaintiff on the line of the highway, on the 22d day of February, 1909, or 3 weeks after the petition was filed; that the building was so constructed that it was blown down soon afterwards, and was rebuilt by the plaintiff about the last of May. This building was ¾ of a mile from plaintiff's home. The building had three sides and a roof. It was a cheap building, built of old bridge lumber. There were no holes dug for the posts, and no foundation under it. Plaintiff claims that, when he built this building, he did not know that the petition had been filed asking the establishment of a road in the line. It appears, however, that the fact of filing the petition, the fact that an effort was made to establish the road on the line, was of general talk in the neighborhood. It does not appear why this building was constructed—what useful purpose it served the plaintiff at the point where constructed. It was a temporary affair, blew down, and was erected after the plaintiff had full notice, not only of the filing of the petition, but of the action of the commissioner. We think that buildings of this character, constructed under the circumstances under which this building was constructed, are not within the protection of the statute. It clearly appears that the building was erected after the petition was filed, and the circumstances indicate that plaintiff must have

had knowledge of that fact, notwithstanding his denial. Further, we must say that the character of the building erected, the place where it was erected, the distance from plaintiff's house and buildings, the fact that it does not appear to have been erected to serve any useful purpose, all lead to the conclusion at which the court below must have arrived—that it was not put there in good faith, but for the very purpose of obstructing the establishment of the road. The statute relied upon is a shield, and not a sword. The erection of temporary buildings on the line of a proposed highway after the petition has been filed, cannot be allowed to stand in the way of a public need for the road. The necessity for the road is a matter exclusively for the determination of the board, and cannot be reviewed by the courts. The board having found that the public necessity required the road, the erection of this temporary building after the petition was filed, and, we think, with knowledge that the petition had been filed, would be to allow the wrongdoer to profit by his own wrong to the prejudice of the public good—something which neither the letter nor the spirit of the statute contemplates.

Some other matters are discussed in argument, but we think that what we have said disposes of the only matters alleged in argument which call for attention. Upon the whole record, we think the action of the district court was right, and it is therefore—*Affirmed.*

LADD, EVANS and SALINGER, JJ., concur.