GEORGE T. JUNKIN, Appellant, v. ORLO D. KNAPP et al., Appellees.

FEBRUARY 7, 1928.

*Sayles & Taylor*, for appellant.

*R. E. Duffield, Herbert A. Huff*, and *Gerald O. Blake*, for appellees.

KINDIG, J.—Plaintiff-appellant is the owner of the southeast quarter of the northwest quarter, and other land, in Section

36, Township 78 north, Range 30, in Guthrie County. Appellees the county auditor and members of the board of supervisors proceeded to take approximately one acre of the land specifically described for road purposes. This portion is near the dwelling house, which is located on the northwest corner of the 40. Separation of about 3 acres from the remainder of the farm is accomplished by the Rock Island railroad, which runs across the ground from the northeast to the southwest. It is on this isolated triangle that the residence, orchard, and other buildings are situated. Attempt by the officials was made to construct the proposed highway parallel with and immediately adjoining the railroad right of way over this three-cornered piece. A temporary injunction was allowed, but dissolved upon final hearing, and permanent relief in that regard denied.

Two general reasons are asserted by appellees to defeat appellant's contentions. They are that: First, no orchard is confiscated or buildings removed; and second, the statute preventing the appropriation of "orchards" does not apply to Section 4607 of the 1924 Code.

I. At the outset, we are confronted with the problem of determining whether or not the trees on these premises constitute and are an "orchard," within the meaning of Section 4566 of the same Code, which reads:

" * * * No road shall, without the owner's consent, be established through any orchard, or ornamental grounds contiguous to any dwelling house, or so as to cause the removal of any dwelling house or other substantial, permanent, and valuable building."

That the plum, peach, and apple "trees" are adjacent or contiguous to this farm house is beyond a peradventure of a doubt; in fact, they are very near thereto. Really, concession is made on this point; but it is claimed by appellees that the plum and peach "trees" are planted in groups or clusters, rather than in rows 20 feet apart, as required for good horticulture, and, according to the testimony of a college professor, these "trees" do not rise to the dignity of an "orchard," because of the foregoing facts and the further consideration that they have not been properly or scientifically pruned, cultivated, and sprayed, and that many of them are totally or partially dead, and none bears fruit.

Rather conclusive is the evidence, however, that the "trees" are alive, hearty, and profitably bearing.

Historical facts at this point are important. Said "orchard" was not planted recently, for the purpose of defeating this project under contemplation; for in fact the "trees" were set out almost 15 years before, and supplemental transplanting has been constantly continued. In all, there are 65 fruit "trees" in the "orchard." Contained therein are four varieties of plums, three or more kinds of apples, two types of cherries, one mulberry, and several peaches. Confiscation for the thoroughfare improvement will destroy all the following "trees:" 31 plum, 1 apple, 24 peach, 1 mulberry, and some cherry. During the year 1925, this "orchard" produced 40 bushels of apples, as well as other fruit; while the 1926 crop was 3 bushels of peaches, 2 or 3 bushels of plums, in addition to the other fruit.

Code Section 4566, supra, had its origin in 1873, and has been consistently maintained through the various re-codifications since that time, as shown by the following sections, respectively: 925, Code of 1873; 1487, Code of 1897. Initiated in the early stages of agriculture in this state for farm protection, the legislative intendments must be construed in the light of the meaning understood by the people to be served and the purposes to be accomplished thereunder. Within the revelation of this history and the purview of the legislative vision then at hand, a definition for "orchard" is to be found. Idealistic conceptions concerning a perfect "orchard" do not meet the occasion, but rather the practical understanding, as applied to an Iowa farm, must furnish the criterion.

Some thought has been given to this proposition in previous decisions of this court. *Ballou v. Elder*, 95 Iowa 693, contains this language:

"Within these limits [of the highway] were a cottonwood tree, a grapevine four or five feet in length, a wild currant bush, and small rose bushes, growing in the sod."

Those shrubs and plants did not, we there said, amount to an "orchard." Later, in *Hartley v. Board of Supervisors*, 179 Iowa 814, we said:

"The evidence shows that there were no living fruit trees in the line of the proposed highway in February of 1909, and the great part of all the trees in the orchard were dead in February,

1909. * * * 'A field once used as an orchard, but in which most of the trees are dead, and none bear fruit, is not an "orchard," within the meaning of the statute forbidding the opening of a road through an orchard.' ''

Finally, in *Hubel v. McAdon*, 190 Iowa 677, the following definition was approved:

"Words and phrases shall be construed according to the approved usage of the language. Section 48, Paragraph 2, Code, 1897. Giving the words of the statute (Section 1487) their ordinary meaning, an *orchard* may be defined as a plantation or inclosure containing fruit trees, such as apples, peaches, cherries, plums, or the like; a *garden* * * * . It cannot be said, under the law or under the facts of this case, that a few small grapevines, four or five small ailanthus trees, a row of rhubarb, and some blackberry bushes, * * * make * * * an orchard."

Continuing our research to pronouncements of the courts of foreign jurisdictions, we find they have held that an "orchard" is "a collection of fruit trees set out for the use of the farm, or for any other purpose." 29 Cyc. 1508. *Nischen v. Hawes* (Ky.), 21 S. W. 1049, furnishes this discussion:

"What constitutes an orchard may be defined to be a collection of fruit trees set out for the use of the farm or for any other purpose. It is not necessary that there should be 50 or 100 trees. The owner may not have land enough to justify an orchard of more than 15 or 20 trees; still it is an orchard; and by the express letter of the statute a road cannot be opened through it without the owner's consent."

See, also, 29 Corpus Juris 400, Section 47, Note 92, Subsections a and b.

Webster's New International Dictionary affords the following interpretation:

"A plantation of fruit trees; an inclosure containing fruit trees; *also the trees collectively*;—used esp. of apples, peaches, pears, cherries, plums, or the like * * * .''

We italicized "also the trees collectively."

After full deliberation upon the statute, its history, object, intent, and the construction made of similar enactments elsewhere, we are constrained to hold that the "trees" involved in this litigation amounted to and were an "orchard."

II. Complaint directed against the "condemnation" because

188

it will "cause the removal of any * * * substantial, permanent, and valuable building" is without merit. Each structure is avoided except a small privy, which does not come within the scope of the protection given by the lawmakers.

III. By way of final substantiation of the judgment and decree of the district court, it is argued by appellees that, even though the "trees" are an "orchard," within the meaning of the act (Section 4566, Code of 1924), yet that is no bar against the present undertaking, for the reason that said Section 4566 does not apply to Section 4607 of the same Code, but rather, that the previous statute relates to Sections 4560 and 4585 thereof. Basis for the authority to condemn this tract for the public way is founded upon Sections 4607 to 4620, both inclusive, Code of 1924, of which Section 4607 is as follows:

"Boards of supervisors on their own motion may change the course of any part of any road or stream, watercourse, or dry run, within any county in order to avoid the construction and maintenance of bridges, or to avoid grades, or railroad crossings, or to straighten any road, or to cut off dangerous corners, turns, or intersections on the highway, or to widen any road above statutory width, or for the purpose of preventing the encroachment of a stream, watercourse, or dry run, upon a public highway."

On the other hand, jurisdiction of the board of supervisors to "establish" an original "highway" must be upon petition, as provided by Sections 4560 and 4562 of that Code. All these provisions are contained within Chapter 237 thereof.

While this is true, it is said the intention of the legislature was, nevertheless, to exclude Section 4566 from any relation to or modification of Section 4607, and confine it entirely to Section 4560 and supplemental enactments. With this view we do not concur.

As before related, this text of Section 4566 concerning "orchards" had its inception in the Code of 1873, as Section 925. Until recently, gardens were also included. Prior to 1886, "roads" could be "established" only by petition, and the protection of "orchards" has ever since appeared in the "chapter" having to do with the creation of a "road" through that method.

However, by Chapter 85 of the Acts of the Twenty-first General Assembly (1886) increased powers were given, and it was there that the right was conferred upon the "board of supervisors" to "change and establish highways along streams in order to avoid buildings, bridges," etc.

Retention was made of this enabling clause in the Code of 1897, where it was known as Section 427. No express security was there repeated for the "orchard," and if any such in fact existed, it was because of the paragraph appearing in the chapter having to do with "establishment of highways by petition." Furthermore, the thirty-sixth general assembly in 1915 enacted still another method of altering and changing, which required a "petition of ten freeholders of the county, or the recommendation of the engineer." Such also safeguarded the "orchard," and in that way came into the Supplemental Supplement of 1915. So in the year 1915 there were three available methods relating to the changing or "establishing" of roads: First, by "petition" addressed to the board of supervisors, under Section 1482 *et seq.*, Code of 1897; second, by "petition" of freeholders, as set forth in Section 1527-r1, Supplemental Supplement, 1915; and third, on "motion" of the board itself, because of Section 427, Code of 1897. Special security for the "orchard" at that time was contained in said Section 1487 of the Code of 1897 and 1527-r4 of the Supplemental Supplement of 1915. Obviously, what is now Section 4607 of the 1924 Code, from its inception until appearing here, has been separated from the "text" about "orchards" directly relating to the other sections. Ultimately, in the Code of 1924, the paragraphs appear as hereinbefore indicated, and the modification concerning the sacredness of "orchards" is in a paragraph by itself, in the same chapter with the other sections; and, so far as the context is concerned, applies to one as well as the other. Distance from its natural chapter associations in previous Codes alone did not prevent what is now Section 4607 of the 1924 Code from being modified by what developed to be Section 4566 thereof. Investigation of the record reveals the fact that the Code commissioners, through Bill No. 117, attempted to limit the extent of the "orchard" statute by proposing the following:

"No road shall be established through any cemetery. No road shall, without the owner's consent, be established through

any orchard, or ornamental grounds contiguous to any dwelling house, or so as to cause the removal of any dwelling house or other substantial, permanent, and valuable building *unless it be necessary to do so in order to avoid dangerous crossings and corners.*" (The italics are ours).

The legislature, however, would not permit this change, and the phrase "unless it be necessary to do so in order to avoid dangerous crossings and corners" was removed by the fortieth general assembly. See Senate Journal pages 466, 467, 486, 488. Nevertheless, it is contended that Section 4607, although in the same chapter with the others, stands by itself now, as well as before, and is not affected by Section 4566.

Measured by the legislative history, codification, and re-codification, it appears to us that this ground is untenable. These sections of the statute must be interpreted according to their associations and environment. *Wright Const. Co. v. City of Des Moines,* 202 Iowa 661, called forth this declaration:

"Manifestly, it [a section of the 1924 Code] must be construed in the light of its context and its associated sections."

That surrounding was furnished and developed by the legislature in the adoption of the Code, and must have the effect naturally arising therefrom. Undoubtedly, times have brought forth new ideas, development is taking place, and progressive road programs are in progress; yet, before we can ignore and in fact change the long and continued policy of the law, it is necessary to have plain and unmistakable legislative authorization, and until that body speaks in evident and unobscure terms, we must abide by the established precedent. Approval of the people for the abolishment of the old protection cannot be known until they speak through their legislature.

Other points are asserted, but they become quite immaterial because of the conclusion we have reached, and therefore no good to the parties can come from a discussion of them.

Manifestly, the judgment and decree of the district court should be, and hereby is, reversed.—*Reversed.*

STEVENS, C. J., and EVANS, FAVILLE, and WAGNER, JJ., concur.