FRED PETERSON, Appellee, v. L. C. BARNETT et al., Appellants.

No. 40990.

NOVEMBER 24, 1931.

F. P. Henderson, for appellee.

Watson & Watson, for appellants.

Evans, J.—In December, 1927, the plaintiff became the holder of four tax sale certificates issued for the taxes of 1925 and covering certain real estate, which was, or later became, by inheritance, the property of Barnett and Hunt, brother and sister. As such holder, the plaintiff paid subsequent taxes for 1927, 1928, and 1929. On January 10, 1930, the redemptioners purported to redeem and for such purpose they tendered and paid the amount of such certificates with interest, exclusive of the taxes paid by the certificate-holder for 1928 and 1929. The alleged reason for excluding the taxes of 1928 and 1929 from the tender of redemption was that the certificate-holder had not complied with the requirements of section 7266 of the code, and for that reason was not entitled to recover such taxes. Our statute provides:

"7266. *Payment of subsequent taxes by purchaser.* The treasurer shall also prepare, sign, and deliver to the purchaser of any real estate sold for taxes duplicate receipts for taxes, interest, and costs paid by him after the date of his purchase for any subsequent year or years, one of which receipts shall be filed in the office of the auditor and noted on the register of sales therein."

"7267. *Failure to file duplicate receipt.* If such duplicate receipt is not so filed before redemption, such tax shall not be a lien upon the land, and the person paying the tax shall not be entitled to recover it of the owner of the real estate."

The controlling question in this case is whether the plaintiff as certificate-holder had sufficiently complied with the requirements of section 7266 to entitle him to claim the amount of the taxes so paid as a part of the redemption. It appears that on or about the time of the payment of the taxes the plaintiff carried each tax receipt to the Auditor's office and delivered the same to the Auditor. The Auditor took the same and purported to take certain data therefrom and make entries thereof upon his records. Thereafter he returned the certificate to the plaintiff. The Auditor did not put a filing stamp upon the tax receipt. Immediately prior to January 10, 1931, certain nego-

tiations were had between the plaintiff and the landowners, whereby the plaintiff consented to certain changes to be made upon the Auditor's records in order to enable a separate redemption by Barnett of his own lands and to relieve him from obligation as to Mrs. Hunt's lands. Pursuant to this arrangement certain changes were made upon the Auditor's records and full redemption was made by Barnett in the first instance by the payment of the full amount due under the two certificates including the subsequent taxes of 1928 and 1929. On January 10, 1931, the idea was first conceived that the defendant-landowners were not liable for the payment of the subsequent taxes. On that date they were allowed by the County Auditor to withdraw their first tendered redemption and to make redemption under all the certificates by payment of the amount due exclusive of the subsequent taxes. While this purported redemption was in progress in the Auditor's office, the plaintiff learned of it and immediately procured duplicate receipts from the treasurer's office and formally filed them at the Auditor's office. This was done after tender of payment by the redemptioners, but before the issuance or preparation of any redemption certificates. The contention of the plaintiff is twofold:

(1) That his delivery of his tax receipts to the treasurer in the first instance was a substantial compliance with the requirements of the statute.

(2) That the filing of the duplicates on January 10, before the issuance of the redemption certificates, was timely and sufficient to bring him within the letter of the statute.

We have occasion to consider only the first contention.

Section 7266 in its original form was considered by this court in Kennedy v. Bigelow, 43 Iowa 74. In that case we held that the failure to file the duplicate receipt with the County Auditor was fatal to the lien of the certificate-holder for subsequent taxes paid. In that case, as in this, a notation had been made upon the Register of Tax Sales. Naturally it is contended by the appellant that our holding in that case is decisive of this. We perceive quite a vital distinction however in the present case. In the present case the certificate-holder carried his tax receipt to the auditor's office and delivered it there. This he did for the very purpose of complying with the statute. His delivery of the receipt to the Auditor in intended compliance

with the statute, was a substantial compliance therewith. He had thereby done his full duty under the statute. In the interest of full regularity, the Auditor doubtless ought to have stamped the instrument, as filed. Such stamping would constitute official evidence of the filing. But it would be *evidence* only of a fact already accomplished by the plaintiff through delivery to the Auditor. Whether strict regularity would have required the Auditor to have retained the custody of the instrument, may be a debatable question. The statute does not in terms so provide. The statute does indicate the purpose of the filing, which purpose was recognized and obeyed by the Auditor. There is no statutory provision requiring the Auditor to retain custody of such instrument. Nor is there any apparent reason for such custody, nor apparent function to be served by such a custody. The statute does require the treasurer to issue ''duplicate receipts.'' The use of the word ''duplicate'' has its significance. It was not a case of an original and a copy. One duplicate was necessarily the equivalent of the other. Only *one* of these was to be filed, and it mattered not which one. The plaintiff did deliver *one* to the Auditor in purported compliance with the statute. Upon such delivery he could have turned upon his heel and relied upon the lien thereby acquired. The Auditor purported to conform to the statute. Does the fact that the Auditor returned the receipt to the plaintiff, destroy the legal effect of the original presentation of the receipt by the tax purchaser to the Auditor?

The present statute had its origin in section 889 of the code of '73. This was the section construed in the Kennedy case above cited. That section, like the present one, required the treasurer to issue duplicate receipts and provided that: ''one of which receipts *said purchaser shall present* to the county auditor, to be by him filed in his office.'' That section, it will be noted, recited the detailed method by which the filing in a public office is accomplished. The present statute abbreviates its language, and provides that one of such receipts ''shall be filed in the office of the auditor.'' Manifestly the legal effect of the two forms of expression is quite identical. It is manifest however that the duty of filing an instrument in a public office rests upon the interested party to the extent only that he *''present''* the instrument to the public officer for the purpose of

filing. At this point appears the vital distinction between the Kennedy case and this one. In the Kennedy case the duty imposed upon the tax purchaser in terms was to *"present"* to the Auditor "one of the receipts." He failed to do so. Such is the necessary implication of the opinion, though the record did not disclose affirmatively just what he did, or failed to do.

In the case at bar, no such failure of the tax purchaser is apparent. The tax purchaser literally complied with the duty imposed upon him. He did *"present"* the receipt to the proper officer. The distinction between the Kennedy case and this, in that respect, is vital.

Since the Kennedy case, we have had occasion, in two or three instances, to consider the question as to what constitutes a sufficient "filing" of an instrument with the County Auditor. Bedford v. Supervisors, 162 Iowa 588, 591; and Smith v. Blairsburg, 179 Iowa 500, 509; and Hartley v. Board, 179 Iowa 814, 821.

In the Bedford case, here cited, we said:

"The paper which was delivered to the auditor by the sheriff was not marked 'filed,' nor did any one direct it to be filed, although the auditor who received it left it among the other papers in his office. It was not necessary, of course, that the paper be marked 'filed,' as this is a mere ministerial act, which, if unperformed when it should have been, will not deprive a party of his rights. A paper is said to be filed when it is delivered to the proper officer and by him received to be kept on file."

In the Smith case, here cited, we said:

"Some claim is made that the petition was not filed with the board of directors of the independent district. It was handed to a director, who presented it to the board, and it has continued in the custody of the secretary since. This was a sufficient compliance with the requirement as to filing the petition. A formal endorsement of having been filed was not essential; the fact of having been filed with the board of directors was essential, and that was done."

In the Hartley case, here cited, we said:

"As to the first objection, that the petition was not filed because not marked filed, we have to say that we do not think

that the word 'file,' as used in the statute, is to be *understood in that technical sense in which it is used in courts of record.* The petition is addressed to the board of supervisors, and is to be presented to them. Without presentation to the board, it becomes of no validity. The auditor is ex-officio clerk of the board. It is delivered to him for the purpose of presenting it to the board. When it is prepared and delivered to him for that purpose and he presents it to the board and the board acts upon it, all that the statute contemplates by the word 'file' has been accomplished. We think there is nothing in this contention of the plaintiff's.''

See also Hedge v. City of Des Moines, 141 Iowa 4, 12.

We think the district court properly awarded decree to the plaintiff.—Affirmed.

FAVILLE, C. J., and KINDIG, MORLING, and GRIMM, JJ., concur.